**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

DAVID ANTHONY SCOTT,

                             Plaintiff,                    5:24-cv-00802 (BKS/MJK)

v.

CAYUGA COUNTY CIVIL SERVICE COMMISSION
and CAYUGA COUNTY DEPARTMENT OF
PLANNING AND ECONOMIC DEVELOPMENT,

                             Defendants.

**Appearances:**
*Plaintiff Pro se:*
David Anthony Scott
Auburn, NY 13021

*Defendants:*
Adam P. Mastroleo
Gianelle M. Duby
Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, NY 13202

**Hon. Brenda K. Sannes, Chief United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.      INTRODUCTION**

      Plaintiff pro se David Anthony Scott brings this action against Defendants Cayuga

County Civil Service Commission and Cayuga County Department of Planning and Economic

Development. (Dkt. No. 1). Plaintiff alleges violations of Title VII of the Civil Rights Act ("Title

VII"), 42 U.S.C. § 2000e et seq.; the Age Discrimination in Employment Act, as amended, 29

U.S.C. §§ 621-634 ("ADEA"); the Uniformed Services Employment and Reemployment Act

("USERRA"), 38 U.S.C. § 4301 et seq.; the New York State Human Rights Law, N.Y. Exec.

Law § 290 et. seq. ("NYSHRL"); and the "Affirmative Action Plan for Cayuga County," Cayuga

County, N.Y., Policy Manual Res. 255-10 (2010)[1] (Dkt. No. 1). Presently before the Court is

Defendants' motion to dismiss. (Dkt. No. 9). The motion is fully briefed. (Dkt. Nos. 9-1, 11, 14).

For the following reasons, the Court grants Defendants' motion in its entirety.

## II.    FACTS[2]

Plaintiff was born in 1966, (Dkt. No. 1-1, ¶ 1), and he identifies his race as "Native

African American[,]" (Dkt. No. 1, at 4). Plaintiff is a "Combat Veteran[,]" (Dkt. No. 1-1, ¶ 1),

and served as a "Non Commissioned Officer performing the role of an Assistant Operations

NCO" "in a Combined Arms Battalion[.]" (Dkt. No. 11, at 7). Plaintiff holds two master's

degrees in "City and Regional Planning" and "Public Policy and Management[.]" (Dkt. No. 11,

at 3).

In July 2018, the Cayuga County Civil Service Commission ("Civil Service

Commission") posted a "Planner [ ] position" with the Cayuga County Department of Planning

and Economic Development. (Dkt. No. 1-1, at ¶ 1). On August 15, 2018, Plaintiff "applied with

the Civil Service Commission for the position of Planner[.]" (*Id.* ¶ 2). "Cayuga County requested

a writing sample sometime in September of 2018, which [Plaintiff] subsequently provided."

---

[1] *See* https://www.cayugacounty.us/1250/Policies.

[2] These facts are drawn from the Complaint, (Dkt. No. 1), and Plaintiffs' responses to Defendants' motions to dismiss, (Dkt. No. 11). The Court considers additional materials outside of the Complaint, consistent with the allegations in the Complaint, because "where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'". *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp. 2d 160 (N.D.N.Y. 2004); *see DeRocha v. Linstruth*, No. 18-cv-1052, 2019 WL 5596252, at *1 n.1, 2019 U.S. Dist. LEXIS 188017, at *3 (N.D.N.Y. Oct. 30, 2019) ("The mandate to read the papers of pro se litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss . . . to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint."). The Court assumes the truth of, and draws reasonable inferences from, the well-pleaded factual allegations, *see Lynch v. City of N.Y.*, 952 F.3d 67, 74–75 (2d Cir. 2020), but does not accept as true any legal conclusions asserted therein, *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

(*Id.*). On October 18, 2018, Plaintiff interviewed with six members of the Planning Department.

(*Id.* ¶ 3). During his interview, one of his interviewers "in the employ of" the Planning

Department," (*id.* ¶ 4), asked Plaintiff if "he was [an] Infantryman in the Ohio National Guard

and the Army National Guard" of the United States, (Dkt. No. 11, at 7). The next day, Plaintiff

"sent thank you letters to the 6 members" of the Planning Department. (Dkt. No. 1-1, ¶ 5).

On October 31, 2018, Plaintiff "was notified by mail that he was not selected for the

position of Planner." (*Id.* ¶ 5). "On or after November 1, 2018," Cayuga County provisionally

hired a white female who had not taken the New York Civil Service Examination for the position

of County Planner. (*Id.* ¶¶ 5, 9).

On February 7, 2019, Plaintiff sent a Freedom of Information Law ("FOIL") Request to

the "Clerk of the Legislature of Cayuga County for African American Male Employment

Information." (*Id.* ¶ 6). On March 14, 2019, the Clerk "responded to the FOIL request stating

that 'Cayuga County did not track applicants or appointments by race.'" (*Id.*).

"Sometime in late 2019," the white female hired for the Planner position left "for

unspecified reasons." (*Id.* ¶ 7). Plaintiff "was eligible for the position of Planner at the time," but

Cayuga County did not create an "Eligible List" in 2018. (*Id.*). No New York State Civil Service

Examination was scheduled in Cayuga County in 2019. (*Id.*).

"Sometime in 2020," the Planning Department and the Civil Service Commission

"repost[ed] the Planner position . . . without an Eligible List." (*Id.* ¶ 8). Cayuga County hired a

white male, who "did not take the New York State Civil Service Examination for Planner at any

time in 2020." (*Id.*).

In 2021, the Planning Department and the Civil Service Commission again "post[ed] a

Planner position." (*Id.* ¶ 9). "This was the third time that the Defendants had reposted the Planner

position without any New York State Civil Service Examination to accompany it." (*Id.*). Cayuga County hired a second white male, who "did not take the Civil Service Examination at any time in 2021."[3] (*Id.*).

On August 20, 2021, Plaintiff "hand-carried a written complaint of Equal Employment Opportunity Discrimination to the New York State Division of Human Rights at the John H. Hughes State Office Building in Syracuse, New York." (*Id.* ¶ 10). Plaintiff was "denied direct access to the NYS Division of Human Rights by a uniformed security officer[,]" and "was made to sign it over to that individual." (*Id.*). Plaintiff's complaint "has yet to be responded to or decided" by the Division of Human Rights ("DHR"). (*Id.*). In January, February, and July of 2022, the DHR "failed to issue a Summary Adjudication of Mr. Scott's complaint of Equal Employment Opportunity Discrimination despite three letters" from Plaintiff demanding "Summary Adjudication." (*Id.* ¶ 11).

"Shortly after [Plaintiff] complained to the [DHR]," the County posted another Planner position. (*Id.*). Plaintiff applied again for the Planner position on August 17, 2022. (*Id.* ¶ 12). Despite having Plaintiff's current address on his August 17, 2022 Planner application and Veterans Service Credit application, Cayuga County sent Plaintiff's "Admission Ticket to the October 2022 Civil Service Exam for Planner to his former, 2018, address[.]" (*Id.* ¶ 13). After Plaintiff "filed a letter of protest[,]" the Civil Service Commission offered him a choice of alternate exam dates. (*Id.*). Plaintiff took the Planner Civil Service Examination on October 14,

---

[3] No "New York State Civil Examination for the position of Planner was scheduled in Cayuga County in 2021." (Dkt. No. 1-1, ¶ 10).

2022, "on a business day[,]" and was the only person who took the exam in that manner. (*Id.* ¶ 13–14).

On February 22, 2023, Plaintiff received his exam results and was informed that "[h]is position" on the "Eligible List" "was 2" with a total score of 90. (*Id.* ¶ 15). Cayuga County thereafter "decided to retain and make permanent the appointment of" the two white males it previously hired, and to "once again not appoint [Plaintiff] to the position of Planner." (*Id.* ¶ 16).

Plaintiff filed a Title VII complaint with the United States Equal Employment Opportunity Commission ("EEOC") on July 31, 2023. (Dkt. No. 1-1, ¶ 17). Plaintiff alleged that he learned on March 1, 2023, that he was not selected for the position he applied for in August 2022, and alleged discrimination in failing to hire for the 2018 position as well as the 2022 position. (Dkt. No. 1-2). Defendants responded to the EEOC on September 7, 2023. (*Id.*). On March 18, 2025, the EEOC issued a notice of "Right to Sue" letter to Plaintiff, (Dkt. No. 1-3), which Plaintiff opened "electronically" on March 19, 2024, (Dkt. No. 1-1, ¶ 17).

On May 12, 2024, Plaintiff filed a USERRA complaint against the Cayuga County Planning Department with the United States Department of Labor. (*Id.* ¶ 18). On June 13, 2024, Plaintiff filed a motion "to suspend the investigation and administratively close" that complaint with the "United States Department of Labor, Office of the Assistant for Veterans' Employment and Training." (*Id.*).

## III.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face,'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations

sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Twombly*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See EEOC v. Port Auth.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The complaint of a plaintiff proceeding pro se "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). "Nonetheless, a pro se complaint must state a plausible claim for relief." *Id.*

## IV.    DISCUSSION

### A.    Claims against the Civil Service Commission and the Planning Department

Preliminarily, Defendants argue that "any claims asserted against the Planning Department or the Civil Service Commission must be dismissed because they are not cognizable as a matter of law." (Dkt. No. 9-1, at 14). Plaintiff disagrees. (Dkt. No. 11, at 13-15).

"The only proper defendant in a lawsuit against an agency of a municipality is the municipality itself, not the agency through which the municipality acted." *Rodriguez v. Nassau Cnty.*, No. 16-cv-02648, 2019 WL 4674766, at *13, 2019 U.S. Dist. LEXIS 164520, at *35 (E.D.N.Y. Sept. 25, 2019), *aff'd sub nom. Rodriguez v. Cnty. of Nassau*, 830 F. App'x 335 (2d Cir. 2020). "Under New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting *Omnipoint Comm'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) (internal alterations omitted).

Nevertheless, the Court will construe the Complaint liberally to allege claims against Cayuga County. *See Friedman v. New York City Admin. for Children's Servs.*, 502 F. App'x 23, 27 (2d Cir. 2012) ("Even though Mr. Friedman brought claims against ACS, City agencies are not suable entities, and thus, the proper defendant is the City of New York. We refer to ACS instead of the City of New York for convenience."); *Mulqueen v. Herkimer Cnty. Child Protective Servs.*, No. 22-cv-1301, 2023 WL 4931679, at *6, 2023 U.S. Dist. LEXIS 133719, at *17 (N.D.N.Y. Aug. 2, 2023) ("Plaintiffs have named Herkimer County Child Protective Services as a defendant in their complaint, which the court will construe liberally to constitute a cause of action against Herkimer County."), *report and recommendation adopted*, No. 22-cv-1301, 2024 WL 756833, 2024 U.S. Dist. LEXIS 30961 (N.D.N.Y. Feb. 23, 2024).

**B.      Timeliness of Complaint Following Right to Sue Letter**

Defendants argue that Plaintiff's discrimination claims under Title VII and the ADEA must be dismissed as time-barred because Plaintiff filed the Complaint more than 90 days after receiving his right to sue letter. (Dkt. No. 9-1, at 14-15). Plaintiff opposes dismissal and argues the Court should find his Complaint timely. (Dkt. No. 11, at 15).

"Although the statute of limitations is an affirmative defense on which a defendant bears the burden of proof, courts may nonetheless dismiss a case on statute of limitations grounds if a complaint, on its face, 'clearly shows the claim is out of time.'" *Boles v. Eastman Kodak Co.*, No. 14-cv-6243, 2015 WL 213248, at *1, 2015 U.S. Dist. LEXIS 4388, at *2 (W.D.N.Y. Jan. 14, 2015) (quoting *Harris v. N.Y.C.*, 186 F.3d 243, 250 (2d Cir. 1999)); *see also St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 163 (E.D.N.Y. 2010) ("For a defendant's statute of limitations arguments to succeed, the plaintiff must 'plead[ ] itself out of court.'" (quoting *In re marchFIRST Inc.*, 589 F.3d 901, 904-05 (7th Cir. 2009) (alteration in original)).

"Under both Title VII and the ADEA, a claimant may bring suit in federal court only if [they have] filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001). "In order to be timely, a claim under Title VII or the ADEA must be filed within 90 days of the claimant's receipt of a right-to-sue letter" from the EEOC. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996). "The 90–day period is 'strictly enforced[.]'" *Hughes v. Elmira Coll.*, 584 F. Supp. 2d 588, 589 (W.D.N.Y. 2008) (quoting Holmes v. NBC/GE, 914 F. Supp. 1040, 1042 (S.D.N.Y.1996))  And "[a]lthough pro se plaintiffs are entitled to leniency in other areas of litigation, the case law is clear: The 90-day deadline is strictly enforced against represented and pro se plaintiffs alike." *Perez v. Mason Tenders Dist. Council Tr. Funds*, No. 17-cv-1022, 2017 WL 5125542, at *3, 2017 U.S. Dist. LEXIS 181416, at *5 (S.D.N.Y. Nov. 1, 2017), *aff'd*, 742 F. App'x 584 (2d Cir. 2018). "[I]n the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day." *Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984).

However, the ninety-day time limit may be equitably tolled in certain situations. *See id.* at 146. "To be eligible for equitable tolling, a petitioner must demonstrate 'extraordinary circumstances beyond [their] control' that prevented [them] from timely filing [their] petition." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011) (quoting *Baldayaque v. United States*, 338 F.3d 145, 151 (2d Cir. 2003)). "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Id.* "A pro se litigant's mistake about the correct way to calculate the deadline, such as the misconception that the 90-day deadline is equivalent to a three-month deadline, is not an

excuse." *Perez*, 2017 WL 5125542, at *3, 2017 U.S. Dist. LEXIS 181416, at *6 (citation omitted).

Here, Plaintiff states in his Complaint that the EEOC issued a right-to-sue letter on March 18, 2024, and that he opened his right-to-sue letter "electronically" on March 19, 2024. (Dkt. No. 1-1, at ¶ 17).[4] That letter notified Plaintiff that, if he chose to "file a lawsuit" against Defendants on that charge "under federal law in federal or state court," his "**lawsuit must be filed WITHIN 90 DAYS of**" his receipt of that notice. (Dkt. No. 1-2, at 1). The notice stated that receipt "generally occurs on the date that you (or your representative) view this document," and that his right to sue based on that charge would be lost if he did not file a lawsuit in court within 90 days. (*Id.*). Thus, Plaintiff was required to file his complaint on or before June 17, 2024. Plaintiff mailed the Complaint on June 18, 2024, and it was stamped "Received" and was filed by the Clerk on June 24, 2024—98 days after Plaintiff received the right-to-sue letter on March 19, 2024. (*See* Dkt. No. 1; Dkt. No. 1-7). Therefore, Plaintiff's Complaint was not timely filed, and his Title VII and ADEA claims must be dismissed, unless Plaintiff can establish that the 90-day period should be tolled. *See Evans v. New York City Dep't of Educ.*, No. 23-8119-cv, 2024 WL 4501963, at *2, 2024 U.S. App. LEXIS 26043, at *4–5 (2d Cir. Oct. 16, 2024) (affirming district court's dismissal of discrimination case where complaint was stamped as received by the clerk's office one day after the ninety-day time period following receipt of his right-to-sue letter, and plaintiff did not allege any facts to support equitable tolling).

---

[4] The parties do not appear to dispute that March 19, 2024, the date Plaintiff "electronically" opened the right-to-sue letter, started the 90-day time period. However, even assuming the presumption that a right-to-sue letter has been received by the plaintiff within "three days after its mailing," *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525-26 (2d Cir. 1996), still applies to an electronic notification, and provides an additional 3 days, Plaintiff's complaint, filed 98 days after the right-to-sue letter would still be untimely. *See, e.g., Addonizio v. Nuvance Health*, No. 23-cv-1582, 2024 WL 2958795, at *4, 2024 U.S. Dist. LEXIS 103874, at *8–9 (S.D.N.Y. June 11, 2024) (noting that although it was "unclear whether the presumed 3-day mailing period would still apply where the claimant received notice via an online portal . . . its application to these facts" would not save the plaintiff's Title VII, which were filed more than 93 days after issuance of the right to sue letter).

Plaintiff argues that his claims are not time-barred because of a "60 month period where the Defendants willfully and deliberately withheld salient information regarding" his case, and because the Defendants "withheld and deliberately did not schedule a New York State Civil Service Commission [exam] for 48 months and 2 days for Planner in Cayuga County." (Dkt. No. 11, at 15). To the extent that Plaintiff is attempting to argue that the 90-day period should be tolled because Defendants withheld "critical information," he does not identify the nature of the withheld information or its connection to the 90-day filing period. (*Id.*). Further, even assuming, as Plaintiff alleges, that Defendants failed to schedule a civil service examination between 2018 and 2022, (Dkt. No. 1-1, ¶¶ 13–14), Plaintiff fails to allege facts showing how this impaired his ability to file a complaint during the relevant time period, namely, the 90-day time period between March 19, 2024 and June 17, 2024. *See Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (explaining that "the person seeking application of the equitable tolling doctrine" must show she "acted with reasonable diligence *during* the time period she seeks to have tolled") (internal quotation marks omitted) (emphasis added).

Because Plaintiff does not describe any extraordinary circumstances beyond his control that prevented him from filing his Complaint during the 90-day time period, *see Harper*, 648 F.3d at 137, the Title VII and ADEA claims must be dismissed as time-barred. *See Johnson*, 731 F.2d at 146 ("While the 90-day rule is not a jurisdictional predicate, in the absence of a recognized equitable consideration, the court cannot extend the limitations period by even one day.") (internal quotation marks omitted).

### C.    Timeliness of EEOC Charge

Separately, Defendants argue that Plaintiff's claims under Title VII, the ADEA, and the NYSHRL, related to his 2018 employment application, "must be dismissed because" Plaintiff

failed to file an EEOC charge within 300 days of the alleged discriminatory acts. (Dkt. No. 9-1, at 17). Plaintiff disagrees, repeating his earlier allegations that Defendants withheld information regarding the case. (Dkt. No. 11, at 17). Plaintiff also argues that his claims accrued, and thus that the statute of limitations began to run, on September 7, 2023, which is the day he learned that Defendants hired a white female for the Planner position in November 2018, instead of Plaintiff. (*Id.* at 16–17; Dkt. No. 1-1, ¶ 5).

### 1. Title VII and the ADEA

As noted above, while the statute of limitations is an affirmative defense for which the defendant bears the burden of proof, a court may nonetheless dismiss a case as time-barred "if a complaint, on its face, 'clearly shows the claim is out of time.'" *Boles*, 2015 WL 213248, at *1, 2015 U.S. Dist. LEXIS 4388, at *2 (citing *Harris v. City of New York*, 186 F.3d 245, 250 (2d Cir. 1999)). In New York, under both Title VII and the ADEA, an EEOC charge "must be filed within 300 days of the alleged discriminatory act." *Jones-Kahn v. Westbury Bd. of Educ.-Westbury Union Free Sch. Dist.*, No. 13-cv-7144, 2015 WL 1529839, at *5, 2015 U.S. Dist. LEXIS 43796, at *12 (E.D.N.Y. Mar. 31, 2015). "To determine the timeliness of an EEOC complaint and an ensuing lawsuit, the court must identify the dates on which the alleged discriminatory acts took place." *Coger v. Connecticut*, 309 F. Supp. 2d 274, 282 (D. Conn. 2004), *aff'd sub nom. Coger v. Connecticut Dep't of Pub. Safety*, 143 F. App'x 372 (2d Cir. 2005) (finding Title VII claim untimely where plaintiff was first denied position in 1993, but did not file his EEOC charge until 1996). "The law of accrual is 'concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action.'" *Lugo-Young v. Courier Network, Inc.*, No. 10-CV-3197, 2012 WL 847381, at *5, 2012 U.S. Dist. LEXIS 33562, at *15–16 (E.D.N.Y. Mar. 13, 2012) (quoting *Heins v. Potter*, 271 F. Supp. 2d 545, 554 (S.D.N.Y. 2003)).

11

"Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" each constitute a "separate actionable unlawful employment practice." *Coger*, 309 F. Supp. 2d at 283 (quoting *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.")).

Finally, as explained above, the statute of limitations may be equitably tolled if "the employee was actively misled by [their] employer," "prevented in some extraordinary way from exercising [their] rights, or asserted [their] rights in the wrong forum[.]" *Miller*, 755 F.2d at 24 (citations omitted). However, "[t]he overwhelming weight of the authority has held that pending administrative proceedings do not toll the statutes of limitations of federal claims." *Lomako v. New York Inst. Of Tech.*, No. 09-cv-6066, 2010 WL 1915041, at *6, 2010 U.S. Dist. LEXIS 46549, at *19 (S.D.N.Y. May 12, 2010) (holding that statute of limitations on the plaintiff's federal discrimination claims were not tolled during the pendency of plaintiff's New York Division of Human Rights proceeding), *aff'd*, 440 F. App'x 1 (2d Cir. 2011).

Here, Plaintiff alleges he was notified on October 31, 2018 that he was not hired for the position of Planner. (Dkt. No. 1-1, ¶ 5). Thus, to be timely, Plaintiff was required to file a charge with the EEOC within 300 days, or by August 27, 2019. Plaintiff did not file a charge with the EEOC until July 31, 2023, (*id.* at ¶ 17), which was more than four years after "the alleged discriminatory act," *see Jones-Kahn*, 2015 WL 1529839, at *5, 2015 U.S. Dist. LEXIS 43796, at *12. Plaintiff argues that the "300 day filing deadline started on September 7, 2023," (*See* Dkt. No. 11, at 1), which is "the earliest date that the County revealed that it advertised for a future Civil Service Examination for County Planner but appointed an unqualified White Female City

Planner[,]" (*id.* at 16), and thus "the final submission of the facts of September 7, 2023 would subsequently lead to a deadline of July 7, 2024." (*Id.* at 17). However, "the law of accrual is 'concerned with a plaintiff's knowing that he has suffered an injury, not with any other facts that might support his cause of action[,]'" *see Lugo-Young*, 2012 WL 847381, at *5, 2012 U.S. Dist. LEXIS 33562, at *15–16 (citations omitted), and Plaintiff knew that he had suffered an injury when he was notified that he had not been hired on October 31, 2018, (*see* Dkt. No. 1-1, ¶ 5). *See also Sporten v. Bridgehampton Rd. Races*, LLC, No. 13-cv-1730, 2014 WL 923265, at *7, 2014 U.S. Dist. LEXIS 31353, at *19–20 (E.D.N.Y. Mar. 10, 2014) (dismissing plaintiff's ADA claim as untimely where plaintiff alleged that the reasons for his termination were previously unclear, noting that "[i]t is not a prerequisite to accrual that an employee have information necessary to decide whether the injury is due to wrongdoing by the defendant" (internal citations and quotations omitted)).

Finally, Plaintiff alleges that he tried to file a complaint with the DHR on August 20, 2021, but that he was "denied direct access to the [DHR] by a uniformed security officer," and his claim was never acknowledged. (*Id.* ¶ 10). However, Plaintiff does not allege that *Defendants* prevented him from filing his DHR complaint, or that any other extraordinary circumstance prevented him from filing again. *See Miller*, 755 F.2d at 24. Nor, in any event, would the pendency of his DHR complaint toll the statute of limitations on his federal claims. *See Lomako*, 2010 WL 1915041, at *6, 2010 U.S. Dist. LEXIS 46549, at *19.[5]

---

[5] This analysis does not impact Plaintiff's allegations with respect to Defendants' failure to hire him in 2023, and Defendants have not moved to dismiss that claim as time-barred by the 300-day statute of limitations. *See Allen v. New York City Dep't of Env't Prot.*, 51 F. Supp. 3d 504, 510 (S.D.N.Y. 2014) (noting that "'every failure to promote is a discrete act that potentially gives rise to a freestanding Title VII claim with its own filing deadline.'") (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 157 (2d Cir. 2012)).

Therefore, as Plaintiff alleges no facts supporting equitable tolling, Plaintiff's claims related to Defendants' failure to hire him in 2018 are time-barred. *See Walker v. City of New York*, No. 11-cv-2941, 2014 WL 1244778, at *6, 2014 U.S. Dist. LEXIS 41287, at *18 (S.D.N.Y. Mar. 26, 2014) (dismissing, on motion for summary judgment, Title VII claim as time-barred because it accrued more than 300 days prior to her filing a charge with the EEOC, when plaintiff "was informed or had reason to know of the failure to hire").

### 2.    NYSHRL

"NYSHRL claims have a three-year statute of limitations[.]" *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 446 (S.D.N.Y. 2023) (citations omitted). "[U]nder the NYSHRL[,] a failure-to-hire claim 'accrue[s] when [the] [p]laintiff was informed or had reason to know of the failure to hire.'" *Hall v. New York City Dep't of Educ.*, No. 23-cv-10385, 2024 WL 4979288, at *6, 2024 U.S. Dist. LEXIS 218898, at *18 (S.D.N.Y. Dec. 3, 2024) (quoting *Walker v. City of New York*, 2014 WL 1244778, at *6, 2014 U.S. Dist. LEXIS 41287, at *18. However, "the overwhelming weight of authority within the [Second] Circuit holds that the filing of a charge with the EEOC tolls the statute of limitations for any related claims under the NYSHRL[.]" *Kirkland-Hudson*, 665 F. Supp. 3d at 447 (finding that plaintiff tolled the statute of limitations for her NYSHRL claims by filing her EEOC charge on June 2, 2020, making any allegations occurring after June 2, 2017 timely).

Here again, according to the Complaint, Plaintiff was informed that he would not be hired on October 31, 2018, (Dkt. No. 1-1, at ¶ 5), but Plaintiff did not file a charge with the EEOC until July 31, 2023, (*id.* at ¶ 17)—more than three years after the alleged failure-to-hire claim accrued. And as explained above, while Plaintiff alleges that he attempted to file a complaint with the DHR on August 20, 2021, (*id.* at ¶ 10), and that he "attempted multiple times to try and find out

what happened to his August 20, 2021 complaint[,]" (Dkt. No. 11, at 21), he does not allege any extraordinary facts that would support equitable tolling under these circumstances. He does not allege that any extraordinary obstacle prevented him from filing a new complaint when he did not receive a response, nor that any action on the part of Defendants prevented him from filing his claim. *See Miller*, 755 F.2d 20 at 24; *see also Burke v. United States Postal Serv.*, No. 19-cv-2539, 2020 WL 9816003, at *7, 2020 U.S. Dist. LEXIS 255491, at *15 (E.D.N.Y. Sept. 28, 2020) (holding equitable tolling did not apply to plaintiff's claim where postal service sent denial letter to the correct address, and someone signed for the letter, but plaintiff claimed he never received it); *Plowden v. Romine*, 78 F. Supp. 2d 115, 120 (E.D.N.Y. 1999) ("There is no limiting principle to [plaintiff's] argument that simple ignorance—absent any showing of diligence on his part or allegations of impediments to his staying informed about his case—should provide a basis for equitable tolling; "[t]o hold that the statute of limitations should be extended in this case would allow the statute to be extended indefinitely." (quoting *Balagula v. United States*, 73 F.Supp.2d 287, 290 (E.D.N.Y. 1999)). Therefore, Plaintiff's 2018 failure-to-hire NYSHRL claims are time-barred. *See Kassner v. 2nd Avenue Delicatessen Inc.*, 496 F.3d 229, at 239 (2d Cir. 2007) (upholding district court's dismissal, on motion to dismiss, of plaintiff's ADEA and NYSHRL claims as time-barred where they were filed more than three years after the alleged discriminatory acts).

### D.    Failure to Exhaust Administrative Remedies

Defendants seek to dismiss Plaintiff's ADEA claims "because Plaintiff failed to exhaust his administrative remedies." (Dkt. No. 9-1, at 16). Plaintiff opposes dismissal, and again argues that Defendants withheld critical information from him that prevented him from exhausting his administrative remedies. (*See* Dkt. No. 11, at 16).

"Although a plaintiff is not required to explicitly plead or demonstrate exhaustion at the pleading stage, a court should nonetheless grant a motion to dismiss pursuant to 12(b)(6) for failure to exhaust if it is clear from the face of the complaint that a plaintiff has not exhausted their remedies." *Arnold v. Rsch. Found. for State Univ. of New York*, 216 F. Supp. 3d 275, 286–7 (E.D.N.Y. 2016) (internal citation omitted); *see also Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d 258, 271 (D. Conn. 2010) ("Because Plaintiff indisputably failed to exhaust his administrative remedies through the EEOC with respect to defendant Derby, his ADEA claim against Derby must be dismissed.").

"[T]he administrative exhaustion requirement is the same under the ADEA as it is under Title VII." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003). "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII and ADEA statutory schemes and, as such, a precondition to bringing such claims in federal court." *Anderson v. Derby Bd. of Educ.*, 718 F. Supp. 2d at 269 (citing *Legnani*, 274 F.3d at 686). As such, "[a] plaintiff may not bring an ADEA suit in a federal court unless [they have] timely filed [their] claim with the EEOC or an equivalent local agency." *Gonzaga v. Rudin Mgmt. Co., Inc.*, No. 15-cv-10139, 2016 WL 3962659, at *4, 2016 U.S. Dist. LEXIS 99019, at *11 (S.D.N.Y. July 20, 2016). "A district court may only entertain ADEA claims that are either included in the plaintiff's EEOC charge or are reasonably related to the factual allegations made in the EEOC charge." *Id.* at *5, 2016 U.S. Dist. LEXIS 99019, at *13–14 . "An ADEA claim is reasonably related to the plaintiff's EEOC charge if it would reasonably fall within the scope of the EEOC's investigation." *Id.*

Here, Plaintiff's charge of discrimination filed with the EEOC is attached to, and referenced throughout, his Complaint. (*See* Dkt. No. 1-2). The charge alleges that the Plaintiff

"was not selected for the position because of [his] race, in willful violation of Title VII of the Civil Rights Act," because he was "as qualified or better qualified than the person selected who is not African American." (*Id.*). That charge does not include allegations of age discrimination, nor does Plaintiff allege that he filed a complaint relating to age discrimination with the EEOC, or the NYSDHR. (*See* Dkt. Nos. 1-1, ¶ 17, 18 (describing charges filed with EEOC); 1-3, at 1 (Notice of Right to Sue, referencing Charge No. 525-2023-00944 from Title VII complaint)). And, in Plaintiff's response in opposition to Defendants' motion to dismiss, Plaintiff does not dispute Defendants' assertion that Plaintiff has failed to exhaust his administrative remedies with respect to his ADEA claim. (*See* Dkt. No. 11, at 15). Instead, Plaintiff repeats his allegations that Defendants withheld "salient information" regarding the case. (*See id.*). There is nothing before the Court indicating that the EEOC was on notice of Plaintiff's ADEA claim, and Plaintiff does not allege that he has filed a separate charge. Therefore, even if Plaintiff could demonstrate that his claims were timely, Plaintiff's ADEA claim would separately be dismissed for failure to exhaust his administrative remedies. *See Gonzaga*, 2016 WL 3962659, at *5, 2016 U.S. Dist. LEXIS 99019, at *13 (dismissing plaintiff's ADEA claim where plaintiff had failed to exhaust his administrative remedies, because neither the NYCCHR nor the EEOC had adequate notice of plaintiff's age discrimination claim).

### E.    Failure to State a Claim

Defendants separately argue that Plaintiff fails to state a claim of discrimination under Title VII, the ADEA, the NYSHRL, and USERRA. (Dkt. No. 9-1, at 19-25). Defendants also assert that Plaintiff fails to sufficiently allege retaliation. (*Id.* at 25-29). Plaintiff disagrees. (*See* Dkt. No. 11, at 17-22). The Court has already determined Plaintiff's Title VII, ADEA, and NYSHRL claims must be dismissed as time barred, unless Plaintiff can properly allege facts

supporting equitable tolling. However, because the Court will give Plaintiff the opportunity to amend his Complaint, the Court will briefly address the factual sufficiency of his claims.

### 1. Employment Discrimination

Claims of employment discrimination brought under Title VII, the ADEA, and the NYSHRL "are subject to a largely identical analytical framework." *Wierzbicki v. Cnty. of Rensselaer, N.Y.*, No. 14-cv-950, 2015 WL 4757755, at *4, 2015 U.S. Dist. LEXIS 105748, at *11 (N.D.N.Y. Aug. 12, 2015) (citations omitted). Such claims are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 450 (S.D.N.Y. 2013), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014) (applying *McDonnell Douglas* framework to Title VII, NYSHRL, and ADEA discrimination claims).[6] As this motion is one to dismiss, the Court "focus[es] only on whether the allegations in the complaint give plausible support to the reduced prima facie requirements that arise under McDonnell Douglas in the initial phase of a litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015). To defeat a motion to dismiss, "a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex or national origin was a motivating factor in the employment decision." *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 86 (2d Cir. 2015). The plaintiff may meet the burden of showing a motivating factor "by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (citations omitted). A complaint is sufficient "if it pleads specific facts that support a minimal plausible inference of such discrimination." *Doe v. Columbia University*, 831 F.3d 46, 56 (2d Cir. 2016).

---

[6] Under the ADEA, the final stage of the *McDonnell Douglas* analysis is different. *Dabney*, 958 F.Supp. 2d at 451. At this early stage in the case, however, the distinction is immaterial.

The "Second Circuit has made clear that 'an inference of discrimination'" sufficient to avoid dismissal " 'arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class.' " *EEOC v. Upstate Niagara Coop., Inc.*, No. 16-cv-842, 2018 WL 5312645, at *6, 2018 U.S. Dist. LEXIS 183904, at *17 (W.D.N.Y. Oct. 26, 2018) (quoting *Littlejohn*, 795 F.3d at 312–13); *accord Zimmerman v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). "Within this Circuit, district courts have held that this standard applies with equal force in the failure-to-hire context." *Id.* (citing *Szewczyk v. City of N.Y.*, No. 15-cv-918, 2016 WL 3920216, at *6, 2016 U.S. Dist. LEXIS 91856, at *16–17 (E.D.N.Y. July 14, 2016)).

### a.    Discrimination on the Basis of Race

"In the failure to hire context, '[a]n employer's choice of a less qualified employee not from [p]laintiff's protected class raises an inference of discrimination'" that is sufficient to defeat a motion to dismiss. *See Szewczyk*, 2016 WL 3920216, at *6, 2016 U.S. Dist. LEXIS 91856, at *16 (quoting *Butts v. New York City Dep't Of Hous. Pres. And Dev.*, No. 00-cv-6307, 2007 WL 259937, at *9, 2007 U.S. Dist. LEXIS 6534, at *32 (S.D.N.Y. Jan. 29, 2007), *aff'd sub nom. Butts v. NYC Dep't of Hous. Pres. & Dev.*, 307 F. App'x 596 (2d Cir. 2009) ("Plaintiff has alleged facts sufficient to support an inference that both national origin and religion were motivating factors in Defendants' failure to hire Plaintiff because Plaintiff was denied a position for which she was qualified, and Defendants hired Lak, who was less qualified and outside Plaintiff's national origin and religious groups."); *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 225 (E.D.N.Y. 2014) (finding plaintiff stated a plausible inference of discrimination where plaintiff alleged he was qualified for a position and applied for it, but that the defendant failed to

interview him and gave the position to a less-qualified individual outside the plaintiff's protected class).

"In the absence of direct evidence of discriminatory intent, a plaintiff may also 'raise an inference of discrimination by demonstrating the disparate treatment of similarly situated employees.'" *Cooper v. Templeton*, 629 F. Supp. 3d 223, 230 (S.D.N.Y. 2022) (quoting *Kosack v. Entergy Enters., Inc.*, No. 14-CV-9605, 2019 WL 330870, *6, 2019 U.S. Dist. LEXIS 12483, at *17 (S.D.N.Y. Jan. 25, 2019), *aff'd sub nom. Cooper v. Franklin Templeton Invs.*, No. 22-2763-CV, 2023 WL 3882977, 2023 U.S. App. LEXIS 14244 (2d Cir. June 8, 2023)). To demonstrate the disparate treatment of similarly situated individuals, "the plaintiff 'must show [they were] similarly situated in all material respects to the individuals with whom [they] seek[ ] to compare [them]self.'" *Id.* at 231 (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). Whether these individuals are similarly situated "is ordinarily a question of fact[,]" but "if there are many distinguishing factors between plaintiff and the comparators, the court may conclude as a matter of law that they are not similarly situated." *Id.* (quoting *Watson v. Geithner*, Nos. 10-CV-3948, 10-CV-7282, 2013 WL 5420932, at *10, 2013 U.S. Dist. LEXIS 139673, at *28 (S.D.N.Y. Sept. 27, 2013)).

Here, Plaintiff has alleged that he is a member of a protected class, as he has identified his race as "Native African American." (Dkt. No. 1, at 4). With respect to the Defendants' failure to hire Plaintiff in 2018, Plaintiff alleges that he was "uniquely qualified" for the position of County Planner, because he was "the only applicant to the 2018 [ ] Planner Postings in Cayuga County with 2 Masters Degrees" in City and Regional Planning and Public Policy and Management, "40 years of work experience [,] and a twice decorated Combat Veteran[.]" (Dkt. No. 11, at 3). Plaintiff has also alleged that he was denied the job of County Planner, which went

instead to "an unqualified White Female City Planner who had taken a City Planning Civil Service Examination." (*Id.* at 16). These allegations, if not time-barred, raise "an inference of discrimination" sufficient to survive a 12(b)(6) motion to dismiss. *See Szewczyk*, 2016 WL 3920216, at *6, 2016 U.S. Dist. LEXIS 91856, at *18–19 (citations omitted).

With respect to Defendants' alleged failure to hire him in 2023, Plaintiff cites to the same "uniquely qualif[ications]" for the position. (Dkt. No. 11, at 3). He also states that after taking the civil service examination his rank on list was "2" and his "total score was 90." (Dkt. No. 1-1, at ¶ 12). But unlike in 2018, when the County provisionally hired a white female for the position of Planner, in 2023 the County decided to make permanent the appointments of the two white males who were *previously* provisionally hired in 2020 and 2021. (Dkt. No. 1-1, at ¶¶ 5, 8, 9, 16). Defendants argue that, in this respect, Plaintiff has failed to plead that he and the two white males "were similarly situated in terms of experience, qualifications, and suitability for a Planner position with the County[.]" (Dkt. No. 9-1, at 22). "To the contrary," Defendants argue, Plaintiff has distinguished himself from the two white males because of their provisional appointments. (*Id.*). Plaintiff has not alleged any facts regarding their qualifications. Plaintiff has failed to allege facts from which the Court could plausibly draw an inference of discrimination in Defendants' decision not to hire him in 2023, and this claim would not therefore survive a 12(b)(6) motion to dismiss. *C.f. Szewczyk*, 2016 WL 3920216, at *6, 2016 U.S. Dist. LEXIS 91856, at *18–19.

**b.    Discrimination on the Basis of Age**

"[A]ge discrimination suits brought under the NYSHRL are subject to the same analysis as claims brought under the ADEA." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001) (citations omitted). However, and unlike in cases involving racial discrimination, "well established caselaw requires not only that age-based animus be a factor, but that it be a but-

for cause of the failure to hire." *Neary v. Gruenberg*, No. 16–cv–5551, 2017 WL 4350582, at *4,

2017 U.S. Dist. LEXIS 118203, at *11 (S.D.N.Y. July, 26, 2017) (citing *Gross v. FBL Fin. Servs.,*

*Inc.*, 557 U.S. 167, 175 (2009)); *see also Lebowitz v. New York City Dep't of Educ.*, 407 F. Supp.

3d 158, 172 (E.D.N.Y. 2017). But "at the motion to dismiss stage, a complaint need not allege

that age was the employer's only consideration, [only] that the adverse employment action would

not have occurred without it." *Lebowitz*, 407 F. Supp 3d at 173 (citations omitted).

Here, Plaintiff has alleged that he is over 40 years of age, (*see* Dkt. No. 1, at 4), which

makes him part of the ADEA's protected group, *see* 29 U.S.C. § 623. Plaintiff has also alleged

that he applied to a job for which he was qualified, and that he was not hired—but he has alleged

nothing at all about the age of the other applicants who were ultimately hired to fill the position.

No facts in his Complaint give rise to an inference of discriminatory animus, let alone that his

age was the "but-for" cause of Defendants' failure to hire him. Therefore, Plaintiff has failed to

plausibly allege an age discrimination claim. *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F.

Supp. 3d 301, 316 (S.D.N.Y. 2015) (dismissing ADEA claim where plaintiff failed to "allege any

facts that would warrant the conclusion that Defendant's failure to hire him occurred under

circumstances from which a discriminatory motivation can be inferred") (collecting cases);

*Marcus v. Leviton Mfg. Co.*, No. 15-cv-656, 2016 WL 74415, at *3, 2016 U.S. Dist. LEXIS

1085, at *9 (E.D.N.Y. Jan. 6, 2016), (dismissing ADEA and NYSHRL claims where plaintiff's

allegations "did not include sufficient factual content for the Court to draw the reasonable

inference that Defendant is liable for discriminating against Plaintiff based upon his age"), *aff'd*,

661 F. App'x 29 (2d Cir. 2016).

### c.      Discrimination on the Basis of Military Status

"Claims for military status discrimination under the NYSHRL are analyzed in tandem with USERRA claims." *Fulton v. City of New York*, No. 20-cv-144, 2021 WL 11716365, at *12, 2021 U.S. Dist. LEXIS 268140, at *34–35 (E.D.N.Y. Mar. 15, 2021). To satisfy the first step of the USERRA analysis, "a plaintiff must plead facts upon which it could plausibly be inferred that his military service . . . was a substantial or motivating factor in the adverse employment action taken against him." *Potts v. City of Binghamton*, No. 3:21-cv-505, 2022 WL 4448226, at *5, 2022 U.S. Dist. LEXIS 172169, at *11 (N.D.N.Y. Sept. 23, 2022) (quoting *Zeltman v. Infinigy Solutions, LLC*, No. 20-cv-0571, 2021 WL 2076214, at *3, 2021 U.S. Dist. LEXIS 97357, at *9 (N.D.N.Y. May 24, 2021)). "Military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Fulton*, 2021 WL 11716365, at *12, 2021 U.S. Dist. LEXIS 268140, at *35 (quoting *Woodard v. New York Health & Hosps. Corp.*, 554 F. Supp. 2d 329, 348 (E.D.N.Y. 2008)). "To satisfy the first step of the NYSHRL analysis a plaintiff must allege facts demonstrating that 'the adverse action occurred under circumstances giving rise to an inference of discrimination.'" *Potts*, 2022 WL 4448226, at *5, 2022 U.S. Dist. LEXIS 172169, at *11 (quoting *Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 523 (S.D.N.Y. 2015)). "Discriminatory motivation may be proven through direct or circumstantial evidence, including . . . an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses." *Fulton*, 2021 WL 11716365, at *12, 2021 U.S. Dist. LEXIS 268140, at *35 (quoting *Lapaix v. City of New York*, No. 13-cv-07306, 2014 WL 3950905, at *5, 2014 U.S. Dist. LEXIS 112265, at *12 (S.D.N.Y. Aug. 12, 2014)).

Here, Plaintiff has not satisfied his burden under either the first step of either the USERRA or the NYSHRL analysis. Plaintiff alleges that one of his interviewers for the County Planner position asked if he was an "Infantryman in the Ohio National Guard and the Army National Guard" of the United States. (Dkt. No. 11, at 7). Plaintiff asserts that this question was "arbitrary, capricious, unusual, unreasonable and not relevant to [Plaintiff's] military, military veteran and military combat veteran status, academic qualifications or military experience, aptitude or training"). Plaintiff notes that he "was not just an ordinary Infantryman," and that a person with his military experience "can work as a Planner in any environment." (Dkt. No. 11, at 7-8). But Plaintiff does not allege any facts from which the Court could find that this question gives "rise to an inference of discrimination." *See Potts*, 2022 WL 4448226, at *5, 2022 U.S. Dist. LEXIS 172169, at *11 (citations omitted). The alleged question does not include any negative insinuations about the military or Plaintiff's military service. Nor does Plaintiff claim his interviewer was hostile toward him because of his military experience. *See McDuffie v. Eli Lilly & Co.*, No. 04-cv-05995, 2009 WL 857069, at *8, 2009 U.S. Dist. LEXIS 30332, at *23 (S.D.N.Y. Mar. 31, 2009) (dismissing USERRA discrimination claim where there was "no evidence of expressions of hostility toward" plaintiff's military status). Plaintiff does not "plead facts upon which it could plausibly be inferred that his military service . . . was a substantial or motivating factor" in Defendants' choice not to hire him. *See Potts*, 2022 WL 4448226, at *5, 2022 U.S. Dist. LEXIS 172169, at *11 (citations omitted). Plaintiff thus fails to state a claim under USERRA and the NYSHRL for discrimination on the basis of his military status.

### 2.    Retaliation

Defendants also argue that Plaintiff's retaliation claims must be dismissed because Plaintiff failed to allege "that he engaged in protected activity that the Defendants were aware

of," or a "causal connection between Plaintiff's alleged protected activity and the denial of employment." (Dkt. No. 9-1, at 26). Plaintiff opposes Defendants' motion and argues that Defendants retaliated against him for filing a complaint with the DHR. (*See* Dkt. No. 11, at 20-22).

Title VII states that "[i]t shall be an unlawful employment practice for an employer to discriminate against any ... employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3a. "Thus, for a Title VII retaliation claim to survive a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90; *see also Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 447 (S.D.N.Y. 2018) (analyzing Title VII and NYSHRL retaliation claims under same standard).

Plaintiff alleges he engaged in protected activity when he first delivered his complaint to DHR on August 20, 2021. (Dkt. No. 1-1, at ¶ 10). Defendants do not contest that filing a complaint of discrimination with the DHR would constitute protected activity. *See Sharpe v. Utica Mut. Ins. Co.*, 756 F. Supp. 2d 230, 239 (N.D.N.Y. 2010) (noting that the act of filing a complaint with the DHR "undisputably constitute[d] protected activity"). However, Defendants argue that Plaintiff does not plausibly allege any facts suggesting that Defendants had knowledge of his complaint to the DHR, nor that there was a causal connection between his complaint and Defendants' decision not to hire him. (Dkt. No. 9-1, at 26). The Court agrees.

To state a claim for retaliation under Title VII and the NYSHRL, a plaintiff must show that the defendant had knowledge of the plaintiff's protected activity. *See Hughes*, 304 F. Supp. 3d at 447. "To satisfy this requirement, a plaintiff is not required to show that the individual decision-makers had knowledge of [their] protected activity; it is sufficient if the corporate entity has been put on notice of plaintiff's complaint[.]" *Risco v. McHugh*, 868 F. Supp. 2d 75, 112 (S.D.N.Y. 2012) (citing *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)). But at no point in the Complaint does Plaintiff allege any facts supporting Defendants' knowledge of his complaint to the DHR. Plaintiff alleges only that he "hand-carried a written complaint" a DHR complaint to a DHR building in Syracuse, New York, where he signed it over to a security officer. (*See* Dkt. No. 1-1, ¶ 10). Plaintiff does not provide any allegations from which the Court can infer his complaint was received by Defendants. Therefore, Plaintiff fails to adequately plead Defendants' knowledge of his protected activity.

A plaintiff stating a claim for retaliation must also allege "that there was a causal connection between [their] protected activity and the adverse employment action." *See Hughes*, 304 F. Supp. 3d at 447. "To adequately plead causation, 'the plaintiff must plausibly allege that the retaliation was a "but-for" cause of the employer's adverse action.'" *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). "'But-for' causation does not . . . require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Id.* (quoting *Vega*, 901 F.3d at 90–91). "A retaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action," *Vega*, 801 F.3d at 90 (citations omitted), or "directly through evidence of retaliatory animus directed against the plaintiff by the defendant." *Littlejohn*, 795 F.3d at 319 (quoting *Gordon*, 232 F.3d at 117).

Construed liberally, the Complaint attempts to allege causation by noting that Defendants scheduled a Civil Service Examination for Planner in October of 2022 "only after" Plaintiff attempted to file a complaint with the DHR in August of 2021. (Dkt. No. 11, at 21). But that is a gap of more than a year, and is insufficient "to raise a plausible inference of causation without more." *Ray v. New York State Ins. Fund*, No. 16-cv-2895, 2018 WL 3475467, at *11, 2018 U.S. Dist. LEXIS 120728, at *29 (S.D.N.Y. July 18, 2018) (dismissing Title VII retaliation claim for lack of causation); *Riddle v. Citigroup*, 640 F. App'x 77, 79 (2d Cir. 2016) (affirming dismissal where the plaintiff "filed her EEOC charge in April 2008 and her first discrimination lawsuit in June 2009; she submitted online job applications to Citigroup starting in October 2010, because the "gap of some sixteen months" was "too long to support a retaliation claim based solely on temporal connection").

Because Plaintiff does not plausibly allege facts supporting an inference that Defendants knew about his complaint to the Division of Human Rights, or that their decision not to hire him was a but-for cause of that complaint, Plaintiff has failed to state a claim for retaliation. *See Conway v. Healthfirst Inc.*, No. 21-cv-6512, 2022 WL 4813498, at *5, 2022 U.S. Dist. LEXIS 181061, at *14–15 (S.D.N.Y. Sept. 30, 2022) (dismissing retaliation claim where plaintiff "failed to allege facts that create a plausible inference of a causal nexus between his protected activity and the adverse action" because he did not allege facts supporting an inference that the action "was motivated by any retaliatory animus"); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 609 (E.D.N.Y. 2013) (dismissing retaliation claim where the complaint did not "allege that defendant was aware of that protected activity or considered that protected activity in deciding to terminate plaintiff," nor "provide any factual allegations that could establish a causal nexus between her unidentified protected activity and any alleged adverse employment action").

### F.       Violation of Affirmative Action Plan

Finally, Defendants argue that that to the extent Plaintiff seeks to state a cause of action for a violation of Cayuga County's "Affirmative Action Plan," no such cause of action exists. (Dkt. No. 9-1, at 29). The Court agrees. Defendants assert that there is no legal authority recognizing  "a cause of action against a municipality for violation of an Affirmative Action Plan."[7] (Dkt. No. 9-1, at 29). Indeed, Plaintiff cites no legal authority establishing a cause of action under a county policy, nor is the Court aware of any. Accordingly, Plaintiff's policy claim is dismissed.

## V.     LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2) a court should freely give leave to amend "when justice so requires." *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Under Rule 15(a), absent certain circumstances not at play here, a party may amend its pleading only with the opposing party's written consent or the court's leave. *See* Fed. R. Civ. P. 15(a)(1)–(2). "Generally, leave to amend should be freely given, and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir.2000). A court may, in its discretion, deny leave to amend "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 90 (2d Cir. 2023) (quoting *Bensch v. Est. of Umar*, 2 F.4th 70, 81 (2d Cir. 2021).

In recognition of Plaintiff's status as a pro se litigant, and in order to give him an opportunity to allege facts supporting equitable tolling and cognizable claims, the Court grants

---

[7] The Court notes that the Resolution at issue is listed on Cayuga County's website as a part of the "Cayuga County Policy Manual," rather than as a law.

Plaintiff leave to file an amended complaint within thirty (30) days of the date of this Order. In any amended complaint, Plaintiff must clearly set forth the facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts. Any such amended complaint will replace the existing complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect." (internal quotation marks omitted)). Any exhibits that Plaintiffs wish the Court to consider going forward must be attached to the Amended Complaint. This means that their previous complaint and other filings will no longer be the operative documents containing their pleadings and exhibits—everything that is essential must be contained in or attached to the Amended Complaint.

## VI.    CONCLUSION

For these reasons, it is hereby

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 9) is **GRANTED** in its entirety; and it is further

**ORDERED** that any amended complaint must be filed within thirty (30) days of the date of this Order; and it is further

**ORDERED** that if Plaintiff does not file an amended complaint within thirty (30) days, the Clerk of the Court is directed to close this action, without further Order of the Court.

**IT IS SO ORDERED.**

Dated: February 12, 2025
        Syracuse, New York

Brenda K. Sannes
Chief U.S. District Judge